[No. H009691. Sixth Dist. May 20, 1993.]

In re ESKIEL S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ESKIEL S., Defendant and Appellant.

---

1640

**COUNSEL**

Laureen A. Bethards, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Christina V. Kuo and Gerald Engler, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELIA, J.**—Appellant was adjudicated a ward of the court (Welf. & Inst. Code, § 602) and placed on probation after the juvenile court found true allegations that appellant had resisted arrest (Pen. Code, § 148) and possessed cocaine (Health & Saf. Code, § 11351). Appellant asserts that he was unlawfully detained without reasonable suspicion. He therefore claims that (1) there was insufficient evidence to support a finding that he resisted arrest, and (2) his suppression motion should have been granted. We agree.

Where the facts bearing on the legality of a detention are undisputed, as they are in this case, the appellate court is faced with a question of law. (*People* v. *Aldridge* (1984) 35 Cal.3d 473, 477 [198 Cal.Rptr. 538, 674 P.2d 240].) We independently measure the undisputed facts against constitutional standards to determine the legality of the detention. (*Ibid.*) "[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him [or her] to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he [or she] intends to stop or detain is involved in that activity." (*In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957].)

Officer Lawrence Ryan was on patrol in East San Jose at 3:30 p.m. on October 11, 1991. He heard a radio broadcast which reported a possible gang fight involving 10 to 12 Black persons including 1 possibly armed with a rifle in the area of St. James and King. While Ryan was proceeding to that location, he was advised by other units that they were pursuing several of these persons on foot through a park located at McKee and King. As Ryan approached McKee at King, he saw several persons being chased by an officer through the park. Ryan drove to the other side of the park to cut off the persons being pursued. He made visual contact with the pursued persons and ordered them to stop. They did not stop but instead attempted to conceal themselves in a nearby creek. The officers drew their weapons and ordered the subjects of the pursuit to come back out of the creek. Appellant and three others exited the creek. A pat-search of appellant revealed a plastic bag which appellant allowed the officer to examine. This bag was later found to

contain .01 grams of cocaine. Appellant was taken into custody and a petition was filed alleging that he had resisted arrest and possessed cocaine.

Appellant brought a motion to suppress the evidence on the grounds that the detention was unlawful. He interposed a *Harvey-Remers-Madden*[1] objection to admission of evidence of the contents of the radio broadcast Ryan overheard. Ryan testified at the suppression hearing that he detained appellant because appellant was fleeing from other officers thereby, in Ryan's view, resisting arrest. He admitted that he had no other basis for detaining appellant aside from the information contained in the radio broadcast. The court found that the detention was supported by reasonable suspicion. Ryan gave the same testimony at the jurisdictional hearing, and the court found that both allegations were true.

■ Nonviolently resisting an unlawful detention is not a criminal offense, and flight in response to an attempted unlawful detention does not furnish cause to detain. (*In re Michael V.* (1974) 10 Cal.3d 676, 681 [111 Cal.Rptr. 681, 517 P.2d 1145].) ■ Therefore, if the pursuing officers did not have a lawful basis for their attempted detention, Ryan could not rely on their pursuit of appellant to justify his detention of appellant. None of the pursuing officers testified at the suppression hearing or at the jurisdictional hearing. Consequently, there is no basis upon which the juvenile court could have found that the pursuing officers had cause to detain appellant. The only inference which is supported by the evidence is that the pursuing officers had heard the same radio broadcast which Ryan heard and were responding to the information contained therein. However, the radio broadcast could not supply the requisite reasonable suspicion to support a lawful detention because the prosecution failed to establish an evidentiary basis for the information contained in the broadcast. (*Remers* v. *Superior Court, supra,* 2 Cal.3d 659, 666.)

■ "[A]n otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." (*Whiteley* v. *Warden* (1971) 401 U.S. 560, 568 [28 L.Ed.2d 306, 313, 91 S.Ct. 1031].) "[W]hile it may be perfectly reasonable for officers in the

---

[1] A "*Harvey-Madden*" or "*Harvey-Remers-Madden*" objection is based on the holdings in *People* v. *Harvey* (1958) 156 Cal.App.2d 516 [319 P.2d 689], *Remers* v. *Superior Court* (1970) 2 Cal.3d 659 [87 Cal.Rptr. 202, 470 P.2d 11] and *People* v. *Madden* (1970) 2 Cal.3d 1017 [88 Cal.Rptr. 171, 471 P.2d 471]. These three cases established the "collective knowledge" rule. The rule established in these three cases was reaffirmed by the California Supreme Court in *People* v. *Ramirez* (1983) 34 Cal.3d 541, 544-552 [194 Cal.Rptr. 454, 668 P.2d 761].)

field to make arrests on the basis of information furnished to them by other officers, 'when it comes to justifying the total police activity in a court, the People must prove that the source of the information is something other than the imagination of an officer who does not become a witness.'" (*Remers* v. *Superior Court, supra,* 2 Cal.3d 659, 666, quoting *People* v. *Adkins* (1969) 273 Cal.App.2d 196, 198 [78 Cal.Rptr. 397].) "To hold otherwise would permit the manufacture of reasonable grounds for arrest within a police department by one officer transmitting information purportedly known by him to another officer who did not know such information, without establishing under oath how the information had in fact been obtained by the former officer." (*Remers, supra,* at pp. 666-667.) "[W]hen an officer furnishes to another officer information which leads to an arrest, the People must show the basis for the former officer's information." (*Id.* at p. 667.)

In *Remers,* two officers observed a woman walking down the street. A piece of tinfoil was in her purse. One of the officers had been told earlier by another officer that the woman was selling drugs but he did not know what the basis was for this information. (2 Cal.3d at pp. 662-663.) Based on this information, the officers detained and searched the woman and found drugs in the piece of tinfoil in her purse. (*Id.* at pp. 662-663.) At the hearing on her motion to suppress, the prosecution was unable to trace back to its source the officer's belief that Remers was selling drugs. (*Id.* at pp. 668-669.) The California Supreme Court found that the prosecution's failure to justify the detention rendered the fruits of the search inadmissible under the Fourth Amendment. (*Id.* at pp. 667-669.)

■ Justifying an arrest or detention based on information received by an officer through "official channels" requires the prosecution to trace the information received by the arresting officer back to its source and prove that the originating or transmitting officer had the requisite probable cause or reasonable suspicion to justify the arrest or detention. (*People* v. *Madden, supra,* 2 Cal.3d 1017, 1021; *People* v. *Ramirez, supra,* 34 Cal.3d 541, 547.) The California Supreme Court has specifically rejected the argument that the "courts must look only to the perceptions of the officer in the field, rather than trace his [or her] probable cause determination to its source in the law enforcement system . . . ." (*Ramirez, supra,* at p. 550.) Instead, as pointed out in *Remers, Ramirez* and *Whiteley,* where a police communication is the source of the information assertedly constituting cause to detain, the court must look to the transmitting officer and determine whether *that* officer had information constituting probable cause or reasonable suspicion.

The record is void of any evidence of the source of the information contained in the radio broadcast. None of the evidence presented at the suppression hearing or the jurisdictional hearing provided any insight into the origin of the information about a gang fight which was relayed to Ryan and the other officers. This failure by the prosecution is precisely the problem addressed in *Remers* and *Whiteley*. Without a source who can testify to the validity and reliability of the information, it cannot be determined whether this information was sufficient to provide reasonable suspicion to detain appellant.

A radio broadcast which cannot be traced back to its source amounts to nothing more than an anonymous tip. Hence, the information contained in such a broadcast can support a detention only where that information is "sufficiently corroborated to furnish the requisite reasonable suspicion." (*Alabama* v. *White* (1990) 496 U.S. 325, 331 [110 L.Ed.2d 301, 309, 110 S.Ct. 2412, 2416].) Where *significant* portions of the broadcast can be verified, it is reasonable to conclude that the source of the information "is probably right about other facts . . . including the claim that the object of the tip is engaged in criminal activity." (*Id.* at p. 331 [110 L.Ed.2d at p. 310, 110 S.Ct. at p. 2417].) In *People* v. *Johnson* (1987) 189 Cal.App.3d 1315 [235 Cal.Rptr. 62], this court held that a detention was justified where very specific descriptive information contained in a radio broadcast was precisely corroborated by the officers' observations at the scene. (*Id.* at pp. 1317-1320.)

*Johnson* has, however, no application to the facts of this case. Because of the general nature of the information contained in the radio broadcast heard by Ryan, no amount of corroboration could have justified a detention based on the broadcast. There were no "significant" portions of the broadcast. The individuals allegedly involved in the "possible" criminal activity were not described other than by race and only a general "area" was given as their location.[2] Consequently, Ryan's observation of appellant in the general location identified in the radio broadcast was wholly insufficient to justify a detention. Since the detention was unlawful, appellant's suppression motion should have been granted. In addition, appellant's flight from an attempted unlawful detention could not support the juvenile court's finding that appellant had resisted arrest.

---

[2]Undoubtedly, if Ryan had come upon a gang fight or a person armed with a rifle it would not be necessary to rely upon the radio broadcast to furnish reasonable suspicion to detain.

*Conclusion*

The judgment is reversed.

Premo, Acting P. J., and Mihara, J., concurred.