[Crim. No. 18311. Second Dist., Div. One. July 9, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
LEONARD MARIO VILLALVA et al., Defendant and Respondents.

**COUNSEL**

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Joseph P. Busch, District Attorney, Harry Wood and Donald J. Kaplan, Deputy District Attorneys, for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, Harold E. Shabo, Leon Salter and Martin Stein, Deputy Public Defenders, and Hank Di Roma for Defendants and Respondents.

**OPINION**

**LILLIE, J.**—Villalva was charged with possession of a restricted dangerous drug (§ 11910, Health & Saf. Code) and he and Moon with transportation of marijuana (§ 11531, Health & Saf. Code). Motion to suppress the evidence pursuant to section 1538.5, Penal Code, was granted. The People appeal from order dismissing the case.

On November 25, 1969, pursuant to a call to police by Mr. Taylor, superintendent, United Air Lines air express office, Omaha, Nebraska, a police radio dispatcher ordered Officer Reubsam, Omaha Vice Detail, to go to the airport. There he talked with Taylor and two clerks, then saw a green suitcase which was open; therein he observed several packages wrapped in newspaper from which emanated the peculiar odor of marijuana, and enough loose marijuana to make two marijuana cigarettes. He then opened the corner of one of the packages and found marijuana therein. After placing his initials, time and date inside the suitcase and on the packages, checking the names and addresses of sender and addressee in Los Angeles and finding the purported address of the sender in Omaha to be fictitious, he allowed the suitcase to proceed to Los Angeles and immediately telephoned Officer Haldi, Los Angeles Police Department, Narcotics Division, informing him of the foregoing.

While on duty on November 25, Officer Haldi answered the telephone and was informed by the caller that his name was Officer Reubsam, Omaha Police Department, Vice Unit, and of his telephone number and area code; Reubsam told him the following—upon arrival at the Omaha airport he

was shown an open suitcase containing seven pounds of marijuana in three packages; he initialed each package and the inside of the suitcase with his initials and date; the suitcase was green, regular normal size, and the airbill on it bore the name David Jackson, 3301 Curtis Street, Omaha, Nebraska, as sender, and Christopher J. Ballew, 12710 Gibson Street, Compton, California, as addressee; the person who shipped the suitcase was a male Caucasian in his early twenties, about 5 foot 9 inches, 166-175 pounds, bleached blond long hair with a pock-marked or pimply face; the suitcase was being shipped on United Air Lines flight number 367, leaving Omaha at 1555 hours or 3:55 p.m., arriving Los Angeles International Airport at 1755 or 5:55 p.m.

Officer Haldi immediately contacted United Air Lines verifying the flight number and arrival time—five minutes to six. He then went to the airport and gave Reubsam's information to the air freight supervisor; at 6:20 p.m. when the baggage was brought in from the flight he saw on the baggage car a green suitcase bearing an airbill showing the addressee to be Christopher Ballew, 12710 Gibson Street, Compton, and the sender, David Jackson, Omaha, Nebraska. At 11:15 the next morning, defendants called for the suitcase. Officer Haldi observed defendant Moon sign a piece of paper for the suitcase, pick it up, leave, put it in the trunk of a car and drive away. The officers followed the vehicle to 12710 Gibson Street, Compton, and from a half a block away with the aid of binoculars Officer Haldi saw both defendants get out of the vehicle, defendant Villalva open the trunk, Moon take something out of his pocket and do something at the locks of the suitcase, open it and both defendants examine the contents. At this time Officer Haldi approached defendants and saw Moon take a piece of paper out of his pocket and drop it to the curb; the paper was the customer's copy of air freight bill which matched the air freight bill and information he had from Officer Reubsam; both defendants were arrested. When he approached the vehicle Officer Haldi could see inside the open suitcase in the trunk of the vehicle; he observed therein several paper-wrapped packages and several plastic bags, one of which was open and in it he could see green plant material which smelled and looked like marijuana. Villalva was the registered owner of the vehicle; under the driver's seat on the extreme left hand side next to the door the officers found a vial of pills.

The court granted the motion to suppress the evidence on the authority of *People* v. *McGrew,* 1 Cal.3d 404 [82 Cal.Rptr. 473, 462 P.2d 1], and *Abt* v. *Superior Court,* 1 Cal.3d 418 [82 Cal.Rptr. 481, 462 P.2d 10]. The order was made before *People* v. *McKinnon,* 7 Cal.3d 899 [103 Cal. Rptr. 897, 500 P.2d 1097].

The dispositive question is whether there was probable cause to arrest the defendants. In support of the trial court's order respondents argue that inasmuch as it was stipulated that neither officer had a search warrant the People had the burden to show that whoever initially opened the suitcase in Omaha was not acting in concert with or as agent of the police, and no evidence thereof was offered. Such argument misconceives the nature of the 1538.5 motion. ■ It is the burden of the defendant in a criminal case to raise the issue of illegally obtained evidence (*People* v. *Prewitt*, 52 Cal.2d 330, 335 [341 P.2d 1]), and when he raises the question of the legality of an arrest or of a search and seizure he makes a prima facie case when he establishes that the arrest was made without a warrant or that the search was made without a search warrant, then the burden rests on the People to show justification. (*People* v. *Lanthier*, 5 Cal.3d 751, 755 [97 Cal.Rptr. 297, 488 P.2d 625]; *Abt* v. *Superior Court*, 1 Cal.3d 418, 420 [82 Cal.Rptr. 481, 462 P.2d 10]; *People* v. *Kanos*, 70 Cal.2d 381, 384 [74 Cal.Rptr. 902, 450 P.2d 278]; *People* v. *Marshall*, 69 Cal.2d 51, 56 [69 Cal.Rptr. 585, 442 P.2d 665]; *Badillo* v. *Superior Court*, 46 Cal.2d 269, 272 [294 P.2d 23].) The foregoing governs the order of proof on hearings on 1538.5 motions. (*People* v. *Carson*, 4 Cal.App.3d 782, 785-787 [84 Cal.Rptr. 699].)

■ Defendants made a prima facie case of illegal search when it was stipulated that neither officer had a search warrant; thus the burden was on the People to show justification. However, the People's burden was sustained by a compelling showing of facts that no search warrant was necessary and Officer Haldi had probable cause to arrest defendants. (*People* v. *Lanthier*, 5 Cal.3d 751, 755 [97 Cal.Rptr. 297, 488 P.2d 625].) Officer Reubsam, well versed in the detection and identification of illegal narcotics, first saw loose debris which he immediately identified as marijuana in an open suitcase at the Omaha airport; it was substantial enough in quantity to make two marijuana cigarettes. His observation was of that which was "in plain sight, which 'is, in fact, no search for evidence.' (*People* v. *Marshall, supra,* 69 Cal.2d 51, 56-57, 61.)" (*People* v. *McGrew*, 1 Cal.3d 404, 409 [82 Cal.Rptr. 473, 462 P.2d 1]; *Abt* v. *Superior Court*, 1 Cal.3d 418, 421 [82 Cal.Rptr. 481, 462 P.2d 10].) ■ Objects falling in the plain sight of an officer who has a right to be in the position to have that view are subject to seizure and admissible. (*People* v. *Sirhan*, 7 Cal.3d 710, 742 [102 Cal.Rptr. 385, 497 P.2d 1121]; *People* v. *Roberts*, 47 Cal.2d 374, 379 [303 P.2d 721]; *People* v. *Superior Court [Evans]* 11 Cal.App.3d 887, 891 [90 Cal.Rptr. 123].) ■ Having thus observed the contraband, Officer Reubsam was not only authorized but duty bound to seize it. (*Miramontes* v. *Superior Court*, 25

Cal.App.3d 877, 885 [102 Cal.Rptr. 182].) However, instead of effecting a permanent seizure, he opened one of the packages revealing marijuana, closed the suitcase, placed it in transit to Los Angeles, then called Haldi.

Officer Haldi had probable cause to arrest defendants—first, he had a right to rely on Officer Reubsam's information; and second, the information corroborated by his own investigation and personal observations was more than sufficient to furnish probable cause for defendants' arrest. He did not call Omaha to verify Reubsam's official position, but the information Reubsam gave him was of the type relayed by law enforcement officers and sufficiently detailed as to make it reasonable for Haldi to believe he was in fact speaking to a police officer and that the latter had personal knowledge of the information he imparted. The caller identified himself by name as an officer of the Omaha Police Department, Vice Unit, and gave his telephone number and area code; he, as well as Officer Haldi, knew that this and the information he was about to give could be quickly verified by Haldi even while he was conversing with him; therefore, it was reasonable for Haldi to believe that it was unlikely that one pretending to be a police officer would give information that could be so readily verified. Reubsam told him he had initialed and dated each package and the inside of the suitcase, a method of identifying evidence used by law enforcement agencies of which the public generally is not aware; gave the name, address and complete description of the sender of the suitcase in the manner used by law enforcement agencies, and the name and address of the consignee; and said he had checked the sender's address and found it to be fictitious, a type of investigation a police officer would reasonably conduct.

While the information and the manner in which it was imparted was sufficient to justify the reasonable belief that he had received it through official channels from another officer and was based on the latter's personal knowledge, and under the circumstances Officer Haldi could reasonably rely thereon (*People* v. *Ross,* 67 Cal.2d 64, 70 [60 Cal.Rptr. 254, 429 P.2d 606]), in addition his subsequent investigation and personal observations fully corroborated Reubsam's information. He verified the flight number and arrival time and observed the green suitcase brought into the express office as part of the baggage on the specified flight to which was attached an airbill bearing the names and addresses given by Reubsam. The next day he observed defendants call for the suitcase noting that the appearance of the one who claimed the suitcase matched that of the sender described by Reubsam; followed defendants to the address given to him by Reubsam and appearing on the airbill; observed defendants open the suitcase in the trunk of the car and, when he approached the vehicle, saw the open suitcase and therein the newspaper wrapped packages described by Reubsam.

At that time with the foregoing information in his possession he had reasonable cause to believe that defendants had committed a felony. (*People* v. *Hogan,* 71 Cal.2d 888, 890 [80 Cal.Rptr. 28, 457 P.2d 868]; *People* v. *Ross,* 67 Cal.2d 64, 69 [60 Cal.Rptr. 254, 429 P.2d 606]; *People* v. *Hillery,* 65 Cal.2d 795, 803 [56 Cal.Rptr.¹ 280, 423 P.2d 208].) As incident to a lawful arrest and contemporaneously therewith, Officer Haldi had the right to search and seize the suitcase (*People* v. *Superior Court* [*Kiefer*] 3 Cal.3d 807, 812 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]; *People* v. *Terry,* 2 Cal.3d 362, 393-394 [85 Cal.Rptr. 409, 466 P.2d 961]; *People* v. *Thompson,* 25 Cal.App.3d 132, 141 [101 Cal.Rptr. 683]), although the marijuana in the open suitcase was in plain sight of the officer and subject to seizure. (*People* v. *Superior Court* [*Evans*] 11 Cal. App.3d 887, 891 [90 Cal.Rptr. 123].)

The state of the record before the trial court compelled the denial of defendants' motion to suppress inasmuch as there was nothing to establish that the suitcase was initially opened by police or someone acting in concert with, or as an agent of the police. The record is completely silent as to how the suitcase came to be open. In fact, nothing suggests that anyone opened it; for all the court knows the suitcase accidentally opened through damage by handling or as the result of an unknown cause, and airline employees found it in that condition. (See *Weinberg* v. *Superior Court,* 21 Cal.App.3d 1018, 1025 [99 Cal.Rptr. 166].) And if the suitcase was opened by someone, nothing points to who he might have been or why or under what circumstances it was opened; for some reason the sender himself may have opened it. All the record shows is that Officer Reubsam's attention was called to the open suitcase in the airline express office by airline employees. Certainly there is no presumption that an open suitcase found in an air terminal was necessarily opened by police or by someone acting for or in concert with them; and even assuming that an airline employee opened the suitcase, it cannot also be assumed he acted for and on behalf of the police. (*Miramontes* v. *Superior Court,* 25 Cal.App.3d 877, 887 [102 Cal.Rptr. 182].) Thus, if an airline employee opened defendants' suitcase, and this has not been established, the most we can assume is that he acted on his own initiative and as a private individual in the course of his work for United Air Lines, thus there is no question of unlawful search because his conduct is not judged by Fourth Amendment standards. (*People* v. *Superior Court* [*Smith*] 70 Cal.2d 123, 128-129 [74 Cal.Rptr. 294, 449 P.2d 230]; *Miramontes* v. *Superior Court,* 25 Cal.App.3d 877, 884 [102 Cal.Rptr. 182]; *People* v. *Houle,* 13 Cal.App.3d 892, 895 [91 Cal.Rptr. 874]; *People* v. *Baker,* 12 Cal.App.3d 826, 834 [96 Cal.Rptr. 760]; *People* v. *Superior Court* [*Evans*] 11 Cal.App.3d 887,

891-894 [90 Cal.Rptr. 123]; *People* v. *Superior Court* [*York*] 3 Cal.App.3d 648, 659-660 [83 Cal.Rptr. 732].)

A similar case on a 1538.5 motion is *Miramontes* v. *Superior Court*, 25 Cal.App.3d 877 [102 Cal.Rptr. 182]. It was stipulated that police had no search warrant, but the evidence showed that an airline agent, without instructions from police, became suspicious, opened petitioner's footlocker and found marijuana, then exhibited the contents to officers. ■ "When a search by a private individual is part of a coordinated joint operation conducted by the police with a private agent, or when the police request or direct a search, or stand idly by and fail to protect a citizen's rights against an unauthorized search, the evidence thereby secured will be excluded. [Citations.] Petitioner's reliance on this doctrine founders on his *failure to establish* that the airline agent was acting other than on his own initiative in order to protect his employer's airplanes from being used for the illegal transportation of marijuana." (Italics added.) (P. 886.) Petitioner in his contention relied on a quote from *People* v. *Superior Court* [*Evans*] 11 Cal.App.3d 887 [90 Cal.Rptr. 123], which contention the court in *Miramontes* rejected saying at page 887: "Petitioner assumes from this statement that if the [airline] agent opens a shipment because of a suspicion of contraband he is automatically an agent of the police."

In *People* v. *Superior Court* [*Evans*] 11 Cal.App.3d 887 [90 Cal.Rptr. 123], an airline clerk, suspicious that a package contained contraband, took it to Grantham, his supervisor, who opened it, found hashish and called police. When Sergeant McKnight arrived Grantham opened the package to display the hashish. The court validated McKnight's seizure of the package at the airport and held at page 891: "Sergeant McKnight was lawfully present in Grantham's office when the latter pointed out the package in which the hashish was seen by McKnight. Since the rule excluding evidence obtained by an illegal search is not applicable to searches by private persons [citations], the contraband observed by the police officer was in plain view without a preceding official search unless Grantham in opening the package was acting as an agent of the police. [Citations.] While the trial court found that Grantham was acting as an agent of the police, that finding is totally unsupported by the record. It is *that lack* of *evidential support* which renders the order here reviewed by us erroneous." (Italics added.) The court found that Grantham originally opened the package solely as the agent of United Air Lines, not as an agent of the police, and concluded: "Nor does the record contain any evidence that there was any subsequent conduct by Grantham or anyone else constituting a search of the package as an agent of the police. If we accept Sergeant McKnight's essentially uncontradicted testimony as true, he observed the

hashish when he first entered Grantham's office. If we discount that testimony, there is nevertheless no evidence of conduct by a police agent which disclosed the contraband." (P. 892.) (See also *People* v. *Thompson,* 25 Cal.App.3d 132, 141 [101 Cal.Rptr. 683]; *People* v. *Howard,* 21 Cal. App.3d 997, 999-1000 [99 Cal.Rptr. 47].)

Whether the person who initially opened the suitcase, if indeed it was opened by someone, was acting as an agent of the police is a question of fact. (*People* v. *McKinnon,* 7 Cal.3d 899, 911-912 [103 Cal.Rptr. 897, 500 P.2d 1097].) Under *Miramontes* v. *Superior Court,* 25 Cal.App.3d 877 [102 Cal.Rptr. 182], *People* v. *Superior Court* [*Evans*] 11 Cal.App.3d 887 [90 Cal.Rptr. 123], and *People* v. *Carson,* 4 Cal.App.3d 782 [84 Cal. Rptr. 699], the burden is on a defendant on his 1538.5 motion to establish that the evidence he seeks to suppress was illegally obtained. Thus defendant has the burden of going forward with sufficient evidence to establish a prima facie case of illegal search; the burden then shifts to the People to show justification, and if they are successful in sustaining that burden the defendant has failed in his proof unless he offers evidence to controvert the People's showing. Here the stipulation that neither officer had a search warrant was a sufficient prima facie showing of an illegal search. However, the People proved that the contraband in the open suitcase was in plain sight of Officer Reubsam in the air freight office, thus no search requiring a warrant occurred; and that no warrant was necessary for its search and seizure by Officer Haldi for the contraband was in plain sight in the open suitcase in the trunk of defendants' car and the seizure was made incident to and contemporaneous with a lawful arrest. Therefore, since defendants had the burden to prove the evidence was illegally obtained, in order to prevail on the 1538.5 motion it was incumbent on them to show that there was an illegal official search of the suitcase preceding Officer Reubsam's observation of the contraband in the open suitcase. No evidence was offered in this regard.

Finally, *People* v. *McGrew,* 1 Cal.3d 404 [82 Cal.Rptr. 473, 462 P.2d 1], and *Abt* v. *Superior Court,* 1 Cal.3d 418 [82 Cal.Rptr. 481, 462 P.2d 10], are distinguishable from the case at bar because in each the airline employee after opening the package closed it and called police, and the contraband was not in plain sight of the officer; and in each, the search was by or under the authority or instructions of the police.

The order is reversed.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied July 27, 1973, and the petition of respondent Moon for a hearing by the Supreme Court was denied September 6, 1973.