Filed 10/30/14  P. v. Guillen CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F067066 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. VCF263380) |
| ADAM GUILLEN, | **OPINION** |
| Defendant and Appellant. | |

## THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  James W. Hollman, Judge.

Nuttall & Coleman, Roger T. Nuttall and Glenn M. Kottcamp for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Max Feinstat, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*Before Levy, Acting P.J., Kane, J. and Peña, J.

Defendant Adam Guillen entered a no contest plea to one count of possession of child pornography (Pen. Code, § 311.11, subd. (a)) after his motion to suppress the evidence against him was denied. As a result of his plea, the trial court sentenced him to a term of five years of felony probation and ordered him to serve 180 days in custody. On appeal he argues the trial court erred in denying his motion to suppress the evidence. We affirm.

## FACTS[1]

At the preliminary hearing, Porterville police officer Joe Echevarria testified he was dispatched to Darrell Smith's residence to allow his daughter, Jodie Guillen, to pick up property belonging to her husband, defendant. Jodie and defendant had lived with Smith at the residence for approximately one and a half years and were in the process of moving out. Subsequently, Echevarria was told to contact Smith's nephew, Robert Spain. Spain related he, along with his wife and daughter, had been helping Smith clean out the room occupied by defendant. While cleaning the room, Spain's daughter located a briefcase or small suitcase under the bed. Spain told Echevarria Smith did not want defendant's things at his home, so Spain had offered to keep the briefcase. Spain went through the briefcase and discovered videos containing child pornography. Spain had viewed the contents of the DVD's in a "family setting" with "everybody" watching it.

Spain's daughter was dating an officer from the Porterville Police Department and had informed him of the contents of the suitcase. He, in turn, informed Echevarria's supervisor, who instructed Echevarria to determine what was found in the suitcase. Echevarria took possession of the disks and briefcase.

Detective Matthew Green investigated the contents of the suitcase. It contained magazines, DVD's, CD's, and portable media storage devices. Green obtained a search

---

[1]As defendant entered a plea prior to trial and stipulated the preliminary hearing transcript provided a factual basis for his plea, we will recount the facts as adduced at the preliminary hearing.

warrant and conducted a search of the contents. In addition to the pornographic material, the suitcase also contained a letter addressed to defendant. Green found approximately 850 images of child pornography depicting females between the ages of five to 12 years of age engaging in sexual acts. Green subsequently interviewed defendant, who admitted to possessing the child pornography by downloading it from the Internet.

## DISCUSSION

### The Motion to Suppress Was Properly Denied

Defendant initially contends the trial court erred in denying his motion to suppress because the prosecution failed to produce any evidence at the hearing on the motion to suppress regarding the validity of Spain's search of the suitcase. While we agree there was a failure of proof in this case, we find it was defendant's burden to establish the impropriety of the initial search.

Defendant moved to suppress the evidence against him, claiming "the affidavit in support of the search warrant … was deficient." As relevant to the issue presented on appeal, defendant contended the suitcase had been turned over by Spain, "himself a California law enforcement employee, but without any warrant or other legal authority to do so. This was an illegal seizure by a gainfully employed California law enforcement officer, subsequently improperly ratified later by the Porterville Police Department." Defendant appended a copy of the search warrant and the affidavit in support of the warrant to his motion.

The People opposed the motion, arguing initially the exclusionary rule was not implicated here as the suitcase was not searched by a law enforcement officer. According to the People, Spain's employment as a "correctional officer does not make him a 'law enforcement officer' performing a search." Rather, Spain was simply "just helping a relative clean out a room in his house." Furthermore, the People argued defendant's motion to traverse the warrant should be denied as defendant had failed to

3.

meet his burden to establish the affidavit contained a material omission that was made knowingly, intentionally, or with a reckless disregard for the truth.

At the hearing on the motion to suppress, the court first noted the case involved a warrant and, as such, should be decided by the magistrate who had issued the warrant, Judge Sevier. But both parties agreed Judge Hollman could hear the motion. After commenting it had read the parties' motions, the court asked counsel if they had an "[a]dditional evidence or comments." Defense counsel indicated she had additional argument and argued Spain was a law enforcement officer, and even though he may have searched the suitcase when he was off duty, he retained his law enforcement status "24 hours a day, seven days a week" and thus the search was illegal. The prosecutor responded that Spain was acting solely as a private citizen and explained Spain was "available for testimony today if the Court needs to hear from him about his intent and whether or not he was in any way acting under the authority of his employment." The court explained it understood the issue and had read "the transcript and everything that's in the file" and found Spain was acting as a private citizen when he searched the contents of the suitcase.

On appeal, defendant challenges this ruling, but argues "the prosecution failed to meet its burden [at the hearing on the motion to suppress], as the prosecution did not present any evidence at all to justify the warrantless searches and seizures." Defendant is correct in his assertion the prosecution ordinarily bears the burden of establishing a warrantless search was justified. (*People v. Williams* (1999) 20 Cal.4th 119, 127.) However, unlike a warrantless search, a search pursuant to a warrant is presumed lawful, therefore, the burden of establishing a warrant's invalidity rests squarely upon the defendant. (*People v. Amador* (2000) 24 Cal.4th 387, 393; *Theodor v. Superior Court* (1972) 8 Cal.3d 77, 101; *People v. Lazalde* (2004) 120 Cal.App.4th 858, 865.) Here, defendant attacked the validity of the *warrant*, claiming it was the product of an illegal

4.

search.  Consequently, the burden of the initial production of evidence rested with the defense.  Indeed, as one court has explained:

> "Although the ultimate burden of persuasion that, in spite of the People's acquisition of tainted leads or evidence, the evidence presented to the trier of fact is untainted is with the People, *the initial burden of going forward with some evidence that illegal police conduct led to tainted derivative evidence*, is with the accused.  (*Alderman v. United States*, 394 U.S. 165, 183.)"  (*People v. Demoray* (1970) 5 Cal.App.3d 127, 131, italics added.)

Indeed the United States Supreme Court has recognized that when arguing the evidence from an illegal wiretap was unlawfully tainted, the "burden is, of course, on the accused in the first instance to prove to the trial court's satisfaction that wire-tapping was unlawfully employed.  Once that is established … the trial judge must give opportunity, however closely confined, to the accused to prove that a substantial portion of the case against him was a fruit of the poisonous tree.  This leaves ample opportunity to the Government to convince the trial court that its proof had an independent origin."  (*Nardone v. United States* (1939) 308 U.S. 338, 341.)

Applying the above principles it is apparent that, at a minimum, defendant was required to produce evidence there was a prior search by a law enforcement officer without a warrant and a causal link between that conduct and the evidence ultimately recovered.  (*People v. Carson* (1970) 4 Cal.App.3d 782, 785 [defendant, as moving party, bears "the burden of supporting his motion by proof"].)  Upon such a showing, the burden would shift to the prosecution to either justify the search or demonstrate the warrant was untainted by the initial search.  However, there was a complete failure to produce any *evidence* in this case on any unlawful conduct that led to the statements in the affidavit.  As there was never any evidence produced that Spain was in fact a law enforcement officer, there simply was no evidence of a prior illegal search and, thus, no basis to grant the motion.  (*Id*. at p. 787 ["Absent any evidence whatsoever before the court, the defendant movant was not entitled to have his motion under section 1538.5 … granted" (fn. omitted)].)

5.

Defendant's case on appeal rests upon the faulty premise that once he filed his written motion to suppress, the burden of production of the evidence as well as the burden of proof shifted to the People. However, it was defendant's burden to establish the facts of the antecedent search, demonstrating an unlawful search took place that tainted the search warrant affidavit. (Accord, *People v. Coleman* (1975) 13 Cal.3d 867, 890-891, fn. 20 ["The defendant generally bears the burden of proving that some sort of official misconduct has occurred" although the prosecution bears the "burden of proving the legality of warrantless seizures and arrests as well as warrantless searches." After "the defendant meets this burden of '(going) forward'…, it is the prosecution's burden to prove either the attenuation of the taint of the primary illegality or the independent origin of the prima facie-tainted evidence"]; *People v. Carson*, *supra*, 4 Cal.App.3d at p. 785 [defendant, as the moving party, bears "the burden of supporting his motion by proof"].)

While defendant asserted in his motion that Spain was a correctional officer, *evidence* of that fact is nowhere to be found on the record. At the hearing on the motion, as defendant points out, no evidence was received. Spain was never called as a witness to testify as to his employment, nor was there a stipulation between the parties that Spain was, in fact, a law enforcement officer. In short, there was simply no evidence to support defendant's assertions.

It is true defendant attached a copy of the affidavit for the search warrant to his motion. Assuming the trial court considered the statements contained within the affidavit as evidence, we note nothing in the affidavit established Spain was a law enforcement officer. Likewise, it appears the trial court read and considered the preliminary hearing transcript. However, a preliminary hearing transcript is inadmissible at a hearing on a motion to suppress evidence absent a stipulation or an exception to the hearsay rule. (*Wilder v. Superior Court* (1979) 92 Cal.App.3d 90, 94.) Neither appears on the record here. Even if we were to assume the parties stipulated to the use of the transcripts, a review of the testimony reveals no evidence establishing Spain was a law enforcement

officer. Thus, there was simply no evidence before the court establishing there ever was an antecedent search by a law enforcement officer that tainted the later warrant. As no such evidence was presented, the trial court had no basis to grant the motion to suppress.

We are aware of what appears to be a contrary holding in *People v. Torres* (1992) 6 Cal.App.4th 1324, but find that case distinguishable. In *Torres*, the defendants were stopped for speeding and a subsequent consensual search of their car revealed they were in possession of narcotics. Using this information, officers subsequently obtained a warrant to search the defendants' residence, located in a different county, where a large quantity of cocaine was discovered. The defendants challenged the initial vehicle stop and resulting search that took place in Los Angeles County. The court there found the initial stop was without probable cause and suppressed the results of the vehicle search. Subsequently, the defendants brought a motion to suppress evidence and quash and traverse the search warrant that occurred in San Mateo County. At that hearing the court received evidence regarding the initial vehicle stop and search. Additionally, the prosecutor conceded the warrant was not supported by probable cause if the fruits of the vehicle search were suppressed. (*Id.* at pp. 1327-1328.)

The defendants' main contention at the hearing on the motion to suppress was that the warrant was defective "because the affiant officer filed it with intentional or recklessly false statements *regarding the existence of probable cause to stop and defendants' asserted consent to the [vehicle] search*. Defendants only indirectly attacked the warrant as the product of illegally obtained evidence." (*People v. Torres*, *supra*, 6 Cal.App.4th at p. 1334.) As the defendants' motion primarily attacked the statements in the affidavit as false or misleading, it was treated as a motion pursuant to *Franks v. Delaware* (1978) 438 U.S. 154. Pursuant to *Franks*, a defendant bears the burden of producing evidence establishing statements contained within an affidavit in support of a warrant are deliberately false or were made with reckless disregard for the truth.

7.

Furthermore, the defendant bears the burden of establishing that excising these statements results in an affidavit which is insufficient to support the warrant. (*Id*. at pp. 171-172.)

Relying on the procedure set out in *Franks*, the trial court in *Torres* found the defendant had failed to prove the statements contained within the warrant relating to the initial vehicle stop were deliberately false or made with a reckless disregard for the truth. (*People v. Torres*, *supra*, 6 Cal.App.4th at p. 1334.) The court never addressed the threshold issue of whether the initial vehicle stop was justified. *Torres* found this error was prejudicial as the court decided the issue on the more stringent *Franks* standard, which delegates the burden of proof to the defendant rather than requiring the People to justify the reasonableness of the initial vehicle stop and search.

While at first blush it may appear *Torres* supports defendant's position that the People bore the burden of production of evidence here, it is important to note that in *Torres* an evidentiary hearing was held in which evidence regarding the initial vehicle stop and search was presented to the court. Thus, in *Torres*, the court had facts before it that the initial seizure and search had been performed by law enforcement officers. But unlike *Torres*, *no evidence* regarding a prior warrantless search by a law enforcement officer was ever produced in this case. Thus, the trial court had no evidence before it from which it could find an illegal search had taken place. Therefore, the ruling denying the motion to suppress was proper.

## DISPOSITION

The judgment is affirmed.